Steven NICOLET and Christiana Nicolet, husband and wife, and Brian L. Read, Plaintiffs-Appellants,

v.

VILLAGE OF FOX POINT, Defendant-Respondent.

Court of Appeals

*No. 92–1156. Submitted on briefs January 6, 1993.—Decided May 7, 1993.*

(Also reported in 501 N.W.2d 842.)

For the plaintiff-appellant the cause was submitted on the briefs of *Weiss, Berqowski, Brady & Donahue*, with *Debra A. Slater*, of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Carl Backus*, Village Attorney, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   This is an appeal from the trial court order dismissing the complaint of Steven and Christiana Nicolet and Brian L. Read that sought judgments declaring their ownerships of lands, and orders enjoining the Village of Fox Point from any actions inconsistent with their ownerships. The trial court dismissed the complaint because the Nicolets and Read failed to comply with the notice requirements of sec. 893.80(1), Stats. We reverse.

## I. BACKGROUND

The Nicolets and Read are neighbors, owning adjoining properties on Beach Drive in Fox Point. Their properties face Lake Michigan and run at least to Beach Drive, a public road. Their dispute with the Village involves the land directly across the road, between Beach Drive and Lake Michigan.

In 1990, the Nicolets contacted the Village regarding their plans to landscape property between Beach Drive and Lake Michigan. Subsequently, they received a letter from the Fox Point village attorney stating that "Fox Point has always taken the position that such land belongs to Fox Point," and that "[a]ny landscaping or other use of the property will be considered a trespass . . . ."

At about this same time, Read applied to the Village for a permit to build a home on his property. The Village denied his application because of its determination that Read's lot was not big enough to accommodate his plans, consistent with the requirements of the Fox Point zoning code. In denying his application, however, the Village did not include the land between Beach Drive and Lake Michigan in its calculation of the lot size. Read alleges that had the Village done so, his application would have complied with the code.

The Nicolets and Read attempted to gain confirmation that they owned the lands in question. On December 19, 1990, counsel for their title insurer, Chicago Title Insurance Company, wrote the village attorney asserting their position, and asking that the letter be considered "a formal request that the Village acknowledge the fee ownership of these lands in the owners of these lakefront properties." Receiving no response from the Village, the Nicolets and Read commenced their action for declaratory judgments and

injunctive relief under secs. 840.03 and 841.01, Stats., on April 12, 1991. The trial court denied the plaintiffs' motion for summary judgment, granted the Village's cross-motion for summary judgment and dismissed the complaint for failure to comply with sec. 893.80(1), Stats. In dismissing the complaint, the trial court relied on the uncontroverted affidavit of the Fox Point village clerk. According to the affidavit, neither she nor any village official received any written notice of the circumstances of the claim, or any itemized statement of relief sought by the Nicolets or Read. Accordingly, the trial court concluded that the plaintiffs failed to comply with either sec. 893.80(1)(a), Stats., or sec. 893.80(1)(b).[1]

## II. DISCUSSION

Section 893.80(1), Stats., in part, provides:

[N]o action may be brought or maintained against any ... political corporation, governmental subdivision or agency ... unless:

(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the ... political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 801.11. Failure to give the requisite notice shall not bar action on the claim if the ... subdivision ... had actual notice of the claim and the claimant shows to

---

[1] The trial court also rejected the contention of the Nicolets and Read that the letter from Chicago Title to the village attorney otherwise satisfied the actual notice and lack of prejudice requirements of sec. 893.80(1), Stats., because: (1) the letter was never presented to the village clerk; and, (2) Chicago Title was not a party to the lawsuit.

the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . . ; and

(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant . . . and the claim is disallowed.

Appellants argue that their claim for injunctive relief should not be subject to the requirements of sec. 893.80, Stats., because that statute does not apply to equitable actions.[2] We agree.

The Village relies on *Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 357 N.W.2d 548 (1984), to support its contention that sec. 893.80, Stats., applies to actions for equitable relief as well as actions for money damages. *Figgs* involved an action for money damages arising out of the personal injuries suffered by the plaintiff when she fell into a hole left by city employees after they had removed a parking-control sign. *Id.*, 121 Wis. 2d at 47, 357 N.W.2d at 550. The court of appeals concluded that the plaintiff's claim for $4,500 failed to contain a sufficient "itemized statement of the relief sought," and reversed the trial court judgment in favor of the plaintiff. *Id.*, 121 Wis. 2d at 48–49, 357 N.W.2d at 551. The Wisconsin Supreme Court, however, reversed the court of appeals, holding that under sec. 893.80(1)(b), the plaintiff's notice of claim contained a sufficient itemized list of the kinds of relief or the types of remedies sought against the local governmental

---

[2] Appellants raise other arguments with respect to the non-applicability of sec. 893.80, Stats., to their action for injunctive relief. Because of our holding, we need not address the other arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

unit. *Id.*, 121 Wis. 2d at 50–53, 357 N.W.2d at 552–553. In its discussion of how the types of relief must be specified, the supreme court digressed from its discussion of money damages and stated:

> [I]t is apparent that sec. 893.80(1)(b), Stats., requires a list, item by item, of the kinds of relief sought. One kind of relief sought might be, as here, money damages. In another case, it might be a demand for relief by specific performance or by injunction. It should be noted that sec. 893.80 is not a statute only applicable to tort claims or claims for negligence. *The opening sentence of sec. 893.80 recites its applicability to any cause of action. Sec. 893.80, when initially enacted by the legislature, applied only to tort claims, but, by ch. 285, Laws of 1977, the procedures were made generally applicable to any claims against the listed governments.* Accordingly, the statute provides for a method of securing relief against a city that may be different from, or in addition to, damages.

*Id.*, 121 Wis. 2d at 52, 357 N.W.2d at 553 (emphasis added).

The supreme court's comments were dicta. "Dicta are not always ticketed as such, and one does not recognize them always at a glance." Benjamin N. Cardozo, NATURE OF THE JUDICIAL PROCESS 30 (1921). In remarking on sec. 893.80 's application "to any cause of action," *Figgs* was not deciding an issue before the supreme court. Further, the court's discussion of that "applicability" was not germane to the court's reasoning on the issue of whether the plaintiff's complaint for money damages had sufficiently complied with the requirements of sec. 893.80. Therefore, the court's statement regarding the applicability of sec. 893.80 to

"a demand for relief . . . by injunction" was dicta. *Cf. State of Louisiana ex rel. Eaton v. Leis*, 120 Wis. 2d 271, 277, 354 N.W.2d 209, 212 (Ct. App. 1984) (matters not decisive on an issue before the court but which are germane to court's reasoning are not dicta).

Moreover, although sec. 893.80, Stats., specifies that "no action may be brought or maintained" against a governmental unit without complying with that statute's procedural requirements, case law interpreting sec. 893.80, which has uniformly held that the statute does not apply to actions seeking equitable relief, *see Kaiser v. City of Mauston*, 99 Wis. 2d 345, 356–357, 299 N.W.2d 259, 266–267 (Ct. App. 1980), and *Harkness v. Palmyra-Eagle School Dist.*, 157 Wis. 2d 567, 579–580, 460 N.W.2d 769, 774 (Ct. App. 1990), has rendered the statute's meaning ambiguous. Therefore, we may look to the legislative history of sec. 893.80 to discern this statute's intended scope. *See Labor & Farm Party v. Elections Bd. of Wis.*, 117 Wis. 2d 351, 355, 344 N.W.2d 177, 179 (1984) (appellate courts may look to legislative history of a statute where scope of statute's application is unclear).

The *Figgs* dicta, on which the Village relies, reflects an incomplete assessment of sec. 893.80's legislative history. The full legislative history clarifies that sec. 893.80 never was intended to apply to equitable actions. In fact, the prefatory note to ch. 285, Laws of 1977 states that revision of the notice of claim provisions, including sec. 893.80's predecessor, was only intended to "consolidate[ ]" prior procedural provisions, previously scattered throughout the statutes, regarding tort claims against various governmental units.

In addition, the Legislative Council Report (1976), which preceded passage of the statute's eventual revi-

sion, also indicates that this rule was intended to apply to "tort liability." We set forth the entire Legislative Council Report:

> Prior to 1961 local units of government in Wisconsin were generally immune from *tort liability* because of the judicial doctrine of governmental immunity. There were a number of judicial and statutory exemptions to this rule which made the immunity far from a blanket protection. In 1961 the case of Holytz v. Milwaukee (1961), 17 Wis. 2d 26, was decided which abrogated the principal of governmental immunity from tort liability. It was only as to those harms which are torts that governmental bodies were to be liable by reason of this decision. The case also stated that governmental bodies would be responsible for the torts of its employes under respondeat superior. The opinion did not impose liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions, and to that extent a part of the immunity doctrine remained intact.
>
> At the time the decision was handed down it was prospective in its effect. The court felt that governmental units needed some time to make necessary adjustments in order to accommodate the new risks for which they would be liable. In the process of deciding to abrogate the judicial doctrine of governmental immunity, the court specifically stated that the Legislature was free to reinstitute immunity or to impose ceilings on the amount of liability. The general statute concerning the liability of local governmental units for torts was enacted shortly after this decision and in many respects draws from the decision for its content.

87

Legislative Council Report (1976), *reprinted in* Wis. Stat. Ann. sec. 893.80, at 263 (West 1983) (emphasis added).

Finally, Wisconsin Legislative Council Staff Information Memorandum 76–7, which was prepared for the Legislative Council's Special Committee on Public Liability of Local Governments, the committee that spear-headed revision of the statute, also indicates that in revising sec. 893.80's predecessor, the Committee was only concerned with tort liability of local government units. Nowhere in the legislative history is there any indication that the tort liability immunity, and the procedural provisions related to it, were to be applied to actions seeking equitable relief from local governmental entities.

We also note that *Figgs* did not discuss *Kaiser v. City of Mauston*, 99 Wis. 2d 345, 299 N.W.2d 259 (Ct. App. 1980). In *Kaiser*, the court of appeals held that secs. 62.25(1) and 895.43(1) (Sec. 893.80's ancestor), Stats. (1975), only applied to actions against governmental entities for money damages. *Id.*, 99 Wis. 2d at 356, 299 N.W.2d at 266. The defendants in *Kaiser* also argued, however, that the revision of these sections by ch. 285, Laws of 1977, was intended to broaden the reach of the notice of claim statute to include suits seeking equitable relief. *See id.*, 99 Wis. 2d at 356–357, 299 N.W.2d at 266. The *Kaiser* court specifically rejected their argument, stating:

> *If we were to adopt this interpretation of the statute, the right to injunctive relief against enforcement of a municipal ordinance would be meaningless.* The 120-day waiting period during which plaintiffs could not obtain an injunction to enforce their rights could lead to irreparable damage.

The prefatory note to ch. 285, Laws of 1977, makes clear that the purpose of the change in the law was merely to consolidate and make uniform the various statutory procedures for bringing claims against counties, cities, school district, and similar entitles. Had the legislature intended to change the long-standing judicial construction of this statute, we believe it would have done so more plainly than by this amendment.

*Id.*, 99 Wis. 2d at 357, 299 N.W.2d 266–267 (emphasis added).

Similarly, in *Harkness v. Palmyra-Eagle School Dist.*, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), the court of appeals followed *Kaiser*'s reasoning. In *Harkness*, the plaintiff sought, among other relief, injunctive relief in the form of an order to reinstate her to her former teaching position following nonrenewal of her teaching contract. *See id.*, 157 Wis. 2d at 579, 460 N.W.2d at 774. The court of appeals held that sec. 893.80, Stats., did not apply to the plaintiff's claim for injunctive relief and that the statute was only applicable to tort claims against local governmental entities. *Id.*, 157 Wis. 2d at 579–580, 460 N.W.2d at 774. The *Harkness* court stated:

[T]he immunity abrogated by the court and reinstated in limited form by the legislature is immunity from *tort* liability. We have found no authority indicating that it applies to equitable or injunctive relief.

*Id.*, 157 Wis. 2d at 579, 460 N.W.2d at 774 (emphasis in original).

We agree with the reasoning of *Kaiser* and *Harkness*. Any holding to the contrary would render

meaningless most attempts to gain timely, effective injunctive relief against governmental units. Therefore, we conclude that the appellants' requests for injunctive relief were not subject to the notice requirements of sec. 893.80(1), Stats., and their complaint should not have been dismissed. Accordingly, we reverse.[3]

*By the Court.*—Order reversed.

---

[3] Appellants ask this court to determine the merits of their quiet title action. We decline to do so.